**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BYJU'S ALPHA, INC.,<br><br>    Debtor | Chapter 11<br>Case No. 24-10140 (BLS) |
| BYJU'S ALPHA, INC.,<br>        Plaintiff,<br><br>    v.<br><br>BYJU RAVEENDRAN, DIVYA<br>GOKULNATH, and ANITA KISHORE,<br>        Defendants. | Adv. Pro. No. 25-50526 (BLS)<br>  Re: Adv. D.I.  97, 121, 124, 143 |

**AMENDED OPINION GRANTING PLAINTIFFS'
MOTION FOR DEFAULT AGAINST BYJU RAVEENDRAN**[1]

BYJU's Alpha, Inc. (the "Debtor") and GLAS Trust Company LLC ("GLAS")

(together, the "Plaintiffs") have filed a motion requesting that this Court enter a

default judgment against defendant Byju Raveendran for his failure to comply with

the Court's expedited discovery orders in this adversary proceeding.[2]  Defendant

Byju Raveendran ("Raveendran") opposes the Motion for Default.  The Court held a

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 157 and § 1334.

[2] The Plaintiffs filed the Motion Pursuant to Federal Rule of Bankruptcy Procedure 7037 and Federal Rule of Civil Procedure 37(b)(2)(A)(vi) For Default Against Defendant Byju Raveendran (D.I. 97) (the "Motion for Default").

hearing on September 29, 2025 to consider the Motion.  For the reasons set forth herein, the Motion for Default will be granted.

BACKGROUND

This adversary proceeding is part of the Debtor's ongoing efforts to unravel a series of fraudulent transfers that stripped the Debtor of its assets (including the $533 million Alpha Funds and the proceeds thereof (as described more fully herein, the "Alpha Funds")), by placing those assets beyond the reach of the Debtor and its creditors and concealing their whereabouts.[3]  The Debtor commenced this adversary proceeding against Defendants Byju Raveendran, Divya Gokulnath and Anita Kishore on April 9, 2025, asserting claims for breach of fiduciary duties, aiding and abetting breach of fiduciary duties, accounting, conversion and civil conspiracy.

On April 18, 2025, the Debtor filed an Emergency Motion for Limited Expedited Discovery (the "Discovery Motion").[4]  Three days later, Raveendran filed an objection to the Discovery Motion, challenging service and the timing of the discovery but not raising any issue with respect to personal jurisdiction.[5]  The Debtor replied on April 28, 2025 identifying three independent bases for proper service.[6]

A hearing to consider the Discovery Motion was scheduled for May 7, 2025, but Raveendran failed to appear.  The Court granted the Discovery Motion, finding

---

[3] *See Byju's Alpha, Inc. v. Camshaft Cap. Fund L.P. (In re Byju's Alpha, Inc.)*, Adv. Pro. No. 24-50013, <u>Docket No. 383</u> (Bankr. D. Del. Feb. 27, 2025) (Memorandum Opinion granting the Debtor's motion for partial summary judgment).

[4] Adv. D.I. 7.

[5] Adv. D.I. 9.

[6] Adv. D.I. 14 ¶¶ 3-11.

service proper while preserving Raveendran's later right to raise the issue on a Rule 12 motion to dismiss.[7]  On May 9, 2025, the Court entered an Order setting expedited discovery deadlines and scheduling a further discovery status conference for May 27, 2025.[8]

Raveendran thereafter sought a 30-day extension of time for complying with the discovery deadlines on the basis that he was unable to find counsel.[9]  The Court denied the full extension requested, but extended the deadlines by one week until May 30, 2025 (written response deadline) and June 6, 2025 (production deadline) and set a further status conference for June 9, 2025.[10]  Raveendran did not comply with any of the extended deadlines.

The Plaintiffs filed a Motion to Hold Byju Raveendran in Contempt of Court for Failure to Comply with the Court's Orders and Request for Civil Sanctions (the "Contempt Motion") on June 17, 2025.[11]   On June 20, 2025, the Court issued an Order to Show Cause scheduling an evidentiary hearing for June 30, 2025 (the "Show Cause Hearing").[12]  The Order to Show Cause required Raveendran to appear in person or virtually and show cause why he should not be held in civil contempt of Court for failure to comply with the discovery orders.[13]

Raveendran retained Delaware counsel on June 23, 2025, who filed a response opposing the Contempt Motion and promising that Raveendran would

---

[7] Tr. 5/7/2025 at 41:23-43:12 (Main Case D.I. 388).
[8] Adv. D.I. 25.
[9] Adv. D.I. 29.
[10] Adv. D.I. 34.
[11] Adv. D.I.s 45, 46.
[12] Adv. D.I. 47.
[13] *Id.*

3

promptly comply with the discovery orders. He also requested an opportunity to contest the Court's jurisdiction over Raveendran, claiming that the Contempt Motion was not the "vehicle for the Court to decide that question."[14] On the eve of the Show Cause Hearing, Raveendran filed responses to the Plaintiffs' interrogatories and request for production of documents.[15] Raveendran produced four documents prior to the Show Cause Hearing, all of which were public (three newspaper articles and stale financials of the Debtor's former ultimate parent). The Plaintiffs asserted that Raveendran's "eleventh-hour partial responses" to the discovery responses were "evasive, incomplete and not made in good faith."[16]

Raveendran did not appear at the Show Cause Hearing, but his counsel appeared and presented oral argument. At the conclusion of the hearing, the Court granted the Contempt Motion. The Court determined that it had personal jurisdiction over Raveendran, finding that "Mr. Raveendran's conduct that gives rise to the litigation here relates to his activities … in the United States fundraising and serving as a director, officer, or manager of a United States corporation."[17] The Court further decided that "consistent with my ruling a few weeks ago, which was to conclude in fact that the record reflects a sufficient basis for finding that service indeed has properly occurred here, … I believe that I have jurisdiction and I believe I'm obliged to exercise that jurisdiction and authority to enter relief here."[18]

---

[14] Adv. D.I. 53, p. 7.
[15] Adv. D.I.s 60, 61.
[16] Adv. D.I. 57.
[17] Adv. D.I. 64, Tr. 6/20/2025 at 83:1-6.
[18] *Id.* at 83:6-12.

4

The Court also decided that the requirements for civil contempt under Third Circuit law were met because: (i) a valid court order existed, (ii) Raveendran had knowledge of the order, and (iii) that Raveendran had disobeyed the order.[19]  The Court considered Raveendran's argument that he had purged any possible contempt by complying with the discovery order, but concluded that the submissions were insufficient, noting that:

> The Court certainly has enough experience with discovery to recognize when substantive responses have been made, but perhaps need to be supplemented, versus evasive or incomplete responses, and what I find are the responses are evasive and incomplete, particularly considering the extensive record that's been developed in these various proceedings. … I note that the document production likewise is not even remotely satisfactory or consistent with what the Court would expect a legitimate and good faith document production would be.[20]

On July 7, 2025, the Court entered an order directing Raveendran to immediately comply with the discovery orders, holding Raveendran in contempt, and ordering that Raveendran remit to the Clerk of Court the sum of $10,000 for each day he remains in contempt of the discovery orders (the "Contempt Order").[21] As of the date of this Order, no funds have been paid, despite the accumulation of hundreds of thousands of dollars in sanctions.

On July 3, 2025, the Debtor emailed Raveendran's counsel asking whether Raveendran intended to purge his contempt.[22]  During a Rule 26(f) call, Raveendran's

---

[19] Adv. D.I. 64, Tr. 6/30/2025 at 81:13-23 (citing *In re Vaso Active Pharm., Inc.*, <u>514 B.R. 416, 422</u> (Bankr. D. Del. 2014)).

[20] *Id.* at 83:15-25.

[21] Adv. D.I. 66.

[22] Adv. D.I. 98 (Finestone Decl., Ex. 4).

counsel stated that he would provide "an update as soon as I have it." On July 10, the Debtor again asked if Raveendran intended to purge his contempt.[23] Raveendran's counsel responded by letter, received by the Debtor on July 23, 2025, still stating: "We will provide you with an update when we have an answer to whether and how Mr. Raveendran will be purging his contempt."[24]

The Plaintiffs argue that Raveendran continuously sought to delay rather than comply with the Court discovery orders by filing a motion for reconsideration of the Contempt Order and a Motion to Dismiss the adversary proceeding.[25] On August 6, 2026, with no further update on discovery, the Debtor asked again whether Raveendran intended to purge his contempt and comply with the Court orders.[26] The Debtor requested a response by the end of the week, but when none came, the Plaintiffs filed this Motion for Default on August 11, 2025.

## DISCUSSION

The Plaintiffs seek a default judgment as a sanction for Raveendran's failure to comply with the Court's discovery orders under Fed.R.Civ.P. 37(b)(2)(A)(vi), made applicable hereto by Fed.R.Bankr.P. 7037, which provides that "[i]f a party … fails to obey an order to provide or permit discovery, …the court where the action is pending may issue further just orders," including "rendering a default judgment

---

[23] *Id.*, Ex. 5.
[24] *Id.*, Ex. 6.
[25] Adv. D.I.s 69, 70, 74, 75 (filed on July 14 and July 25, 2025, respectively).
[26] Adv. D.I. 98, Ex. 7.

against the disobedient party."[27]  "[T]he decision to impose sanctions is 'generally entrusted to the discretion of the district court.'"[28]

To determine whether to impose a discovery sanction such as dismissal or default judgment, the Third Circuit Court of Appeals instructs that courts should balance six factors:

(1) the extent of the party's personal responsibility;

(2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;

(3) a history of dilatoriness;

(4) whether the conduct of the party or the attorney was willful or in bad faith;

(5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and

(6) the meritoriousness of the claim or defense.[29]

While all six factors should be considered, a court need not find all six to award sanctions.[30]  The Court must weigh the factors "to assure that the 'extreme' sanction of dismissal or default is reserved for the instances in which it is justly merited."[31]

---

[27] Fed.R.Civ.P. 37(b)(2)(A)(vi).

[28] *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580 (3d Cir. 2018) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007)).

[29] *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (the "*Poulis* Factors").

[30] *FKS Akkad Capital Grp., LLC v. JohnFK Medical Co., Inc.*, 2022 WL 266002, *1 (D. Del. July 11, 2022) (citing *United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021)).

[31] *American Asset Fin., LLC v. Feldman (In re Feldman)*, 608 B.R. 426, 436 (Bankr. E.D. Pa. 2019) (citing *Poulis*, 747 F.2d at 870).

*Poulis* Factor 1: The extent of the party's personal responsibility.

This first factor directs the Court to consider the extent that the party – rather than the party's counsel – is responsible for the misconduct.[32]  Here, Raveendran filed an objection *pro se* to the Discovery Motion, but failed to appear at the hearing, either in person or by Zoom. Upon Raveendran's request, the Court granted extra time to respond to the discovery requests while he sought to hire counsel.  But even after he hired counsel Raveendran's discovery responses were evasive and incomplete.  As noted above, the Court determined that his document production response was not "even remotely satisfactory or consistent with what the Court would expect a legitimate and good faith document production would be."[33]

Before entering the Contempt Order, the Court found that the record established that Raveendran had knowledge of the discovery order but had simply refused to comply.[34]  Since entry of the Contempt Order, Raveendran continues to refuse to respond to the discovery requests or pay the sanctions he owes.  The facts and circumstances of this case indicate that Raveendran's continuing failure to adequately respond to the pending discovery requests is a personal decision by Raveendran, himself.[35]

---

[32] *Bortex Ind. Co. Ltd. v. Fiber Optic Designs, Inc.*, 296 F.R.D. 373, 384 (E.D. Pa. 2013). "[I]n situations where an attorney is largely responsible for the misconduct, the Third Circuit has 'increasingly emphasized visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault.'" *Id.* (quoting *Carter v. Albert Einstein Med. Ctr.*, 804 F.2d 805, 807 (3d Cir. 1986)).

[33] Adv. D.I. 64, Tr. 6/30/2025 at 83:15-25.

[34] *Id.* at 81:20-23.

[35] In a related decision, this Court noted that during a phone call in May 2023 with the Lenders' U.S.-based financial advisor and Raveendran's general counsel on the line, Raveendran, himself, stated that "the money is someplace the Lenders will never find it."  *BYJU's Alpha, Inc. v. Camshaft Capital Fund, LP (In re BYJU's Alpha, Inc.)*, 661 B.R. 109, 123 (Bankr. D. Del. 2024).

The first factor weighs in favor of entering the default judgment.

_Poulis_ Factors 2: The prejudice to the adversary.

"Prejudice to the adversary is a particularly important factor in the _Poulis_ analysis,"[36] and evidence of true prejudice caused by the failure to timely respond to discovery bears substantial weight in support of a dismissal or default judgment.[37] Examples of prejudice to the opposing party include "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party."[38] Prejudice, however, does not require a showing of irremediable harm.[39] "Prejudice also includes deprivation of information through non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery."[40]

Raveendran argues that the Plaintiffs cannot demonstrate prejudice because his failure to respond to expedited discovery early in the case does not prevent the Plaintiffs from developing a trial strategy. He also points out that his motion to dismiss for lack of personal jurisdiction and improper service was pending when the Plaintiffs filed this Motion. But Raveendran's argument ignores important background facts. First, when granting the Discovery Motion, this Court already determined that service was proper and that Raveendran was subject to this Court's

---

Raveendran's actions (or inaction) in this case demonstrate a continuation of _his_ intent to delay and defraud the Plaintiffs.

[36] _Hildebrand v. Allegheny County_, 923 F.3d 128, 134 (3d Cir. 2019)

[37] _Scarborough v. Eubanks_, 747 F.2d 871, 876 (3d Cir. 1984).

[38] _Bortex Ind._, 296 F.R.D. at 385.

[39] _U.S. ex rel. Constr. Hardware, Inc. v. Patterson_, 2014 WL 2611178, *4 (E.D. Pa. June 10, 2014).

[40] _Bortex Ind._, 296 F.R.D. at 385 (quoting _Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund_, 29 F.3d 863, 873-74 (3d Cir. 1994)).

9

jurisdiction.[41]  Second, the Debtor sought expedited discovery to determine whether Raveendran, as the Debtor's former CEO and as founder and managing director of T&L, had material knowledge and documents concerning the transfer of the Alpha Funds, including where the money is today.[42]  "There is "urgency" to expedite discovery into "the location of defendants' possible assets" when defendants have "both incentive and capacity to hide their assets."[43]  In a decision in a related adversary, this Court found that during a May 2023 phone call with the Lenders' U.S.-based financial advisor and Raveendran's general counsel on the line, Raveendran, himself, stated that "the money is someplace the Lenders will never find it."  This Court determined: "[i]t is difficult to imagine a single combination of words to demonstrate actual fraudulent intent more clearly."[44]  Here, the Court found that cause existed for the Plaintiffs' requested expedited discovery.[45] Raveendran's months-long delay and ongoing refusal to adequately respond to court-ordered discovery requests in this proceeding has severely prejudiced the Plaintiffs by depriving them of important information and requiring them to expend

---

[41] Further, the Court's Opinion and Order dated November ___, 2025, provides an in-depth analysis of these issues in its decision to deny Raveendran's motion to dismiss based in part on his claim of improper service and lack of personal jurisdiction.

[42] Adv. D.I. 7, ¶¶ 24-26.

[43] *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005); *see also DAS Architects, Inc. v. Rahn*, 2020 WL 6381394, *5 (E.D. Pa. Oct. 30, 2020) (finding good cause for expedited discovery where plaintiff was "concerned that Defendants … may be in the process of attempting to conceal potential assets").

[44] *BYJU's Alpha, Inc. v. Camshaft Capital Fund, LP* (*In re BYJU's Alpha, Inc.*), 661 B.R. 109, 123 (Bankr. D. Del. 2024).

[45] Main Case D.I. 388, Tr. 5/7/2025 at 41:16-43:12.

significant costs through at least five discovery hearings and extensive motion practice.[46]

Raveendran also argues that the Plaintiffs cannot demonstrate prejudice because he asserts that they have access to the information they seek in the Debtor's books and records and in other proceedings.[47]  The Plaintiffs respond that this argument is a red herring.  There is nothing in the record to support the assertion the GLAS has access to relevant documents or that those documents would be responsive to the discovery request.  Raveendran's assertions are also irrelevant. GLAS's actions are not before the Court.  The Motion requires an examination of Raveendran's conduct in response to the discovery orders, and the record clearly shows that Raveendran continuously sought delays and submitted evasive and incomplete responses causing prejudice to the Plaintiffs.[48]

The second factor weighs heavily in favor of entering the default judgment.

*Poulis* Factor 3: A history of dilatoriness.

"Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as constant non-response to interrogatories, or consistent

---

[46] *See* Adv. D.I. 7, 8, 9, 14, 29, 45, 46, 57, 58, 62, 69, 70, 81, 82.

[47] Raveendran claims that Plaintiff GLAS has access to the documents and information of Byju's Ptd. Ltd., a Singapore subsidiary of T&L ("Byju's Singapore") of which the Debtor is a subsidiary, because GLAS invoked the Credit Agreement putting Byju's Singapore into bankruptcy. Raveendran also claims GLAS controls the creditors committee of T&L in India and has access to T&L's documents therein.

[48] *See Bortex Ind.*, 296 F.R.D. at 385 (Court rejected the argument that the defendant could have obtained discovery from a third party at any time during the litigation, deciding the defendant's conduct was not before the court; instead, "the motion at hand requires us to examine [plaintiff's] conduct throughout discovery, and it is important to note that at no time has [plaintiff] denied that it was obligated to turn over the information in question to [defendant].")

tardiness in complying with court orders."[49]  "These problematic acts must be evaluated based on the history of the case as a whole."[50]

Raveendran argues that his failure to adequately respond to a single set of discovery requests cannot satisfy this factor.  But his conduct must be evaluated based on the specific facts and circumstances of this case.  Both this action and related adversary proceedings connected to the Debtor have been characterized by flouting court orders and other actions (and inaction) to delay discovery.  The Court's imposition of monetary sanctions has not purged the ongoing contempt.

This Court found good cause to grant expedited discovery here.  But rather than comply, Raveendran sought delay:  by requesting extensions; by making promises to complete discovery, then providing evasive and incomplete discovery responses; and, finally, in refusing to purge his contempt.  The Plaintiffs point out that Raveendran has failed to comply with (1) the initial interrogatory deadline established in the Discovery Order, (2) the extended deadlines established in the Extension Order, (3) the OSC by failing to appear at the Show Cause Hearing without "good cause," and (4) the Contempt Order. As this Court noted at a hearing on June 30, 2025:

> The additional observation that I would make is that the process in these cases, in this adversary proceeding and in the main case, have shown a consistent effort to delay and obfuscate.  And, as I think counsel has observed, the failure to perform basic discovery responses and participation in litigation across several of these cases has been breathtaking.  I have seen a lot, but I have not seen strategic and

---

[49] *Bortex Ind.*, 296 F.R.D. at 385 (citing *Adams*, 29 F.3d at 875).
[50] *Id.*

12

patterned failure to provide meaningful, substantive responses to very basic and cogent questions that have gone on for more than a year.

Now, I recognize that these proceedings involving Byju Raveendran, and particularly the adversary proceeding, is a newer pleading and a newer proceeding, but it is not as if Mr. Raveendran, Byju Raveendran, is a stranger to these proceedings, and the Court considers the proceedings in the context of all of the matters and all of the proceedings that have been conducted in Bankruptcy Case 24-10140.[51]

The third factor weighs in favor of entering the default judgment.

*Poulis* Factor 4: Whether the conduct of the party or the attorney was willful or in bad faith.

"In assessing whether a party's conduct was willful, courts often look for evidence of intentional or self-serving behavior that indicates flagrant bad faith."[52] "A party's mere negligence is generally not sufficient to warrant [sanctions]."[53]

Raveendran argues that the conduct described by the Plaintiffs (untimely and incomplete discovery responses and failure to appear at a hearing without a satisfactory explanation) do not rise to the level of willfulness or bad faith required to support this factor. The Plaintiffs disagree and argue that Raveendran has repeatedly flouted the Court's discovery orders and has selectively participated in this litigation. They claim: "Raveendran has no problem filing declarations and seeking favorable rulings when it may help his legal defense, but flatly refuses to

---

[51] Adv. D.I. 64, Tr. 6/30/2025 at 84:6-22.
[52] *Bortex Ind.*, 296 F.R.D. at 386.
[53] *Id.*

13

engage in discovery when doing so could undermine his one-sided, self-serving assertions."[54]

The Court has already found that Raveendran's discovery responses were incomplete, evasive and "not even remotely satisfactory or consistent with what the Court would expect a legitimate and good faith document production would be."[55] As noted above in the discussion on factor 3, the Court has also found that Raveendran's behavior has been a strategic pattern of willful failure to comply with discovery.

This fourth factor also weighs in favor of entering the default judgment.

*Poulis* Factor 5: Alternative sanctions.

"The Third Circuit has identified a number of alternative sanctions available to a court, including a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees, or the preclusion of claims or defenses."[56]  Dismissal or default judgment must be sanctions of last resort, and a court should assure itself that no other sanction would serve the ends of justice.[57]

Raveendran argues that the Plaintiffs' motion is a rush to judgment and notes that there has been no non-expedited discovery in this proceeding and no showing of prejudice to the Plaintiffs.  This argument misses several important

---

[54] Adv. D.I. 97 at 14.

[55] *Id.* at 83:15-25.

[56] *Bortex Ind.*, 296 F.R.D. at 387 (quoting *Smith ex rel. El Ali v. Altegra Credit Co.*, 2004 WL 2399773, *7 (E.D. Pa. Sept. 22, 2004) (internal punctuation omitted)).

[57] *Id.* (quoting *Poulis*, 747 F.2d at 869; *Titus v. Mercedes Benz of N.A.*, 695 F.2d 746, 750 (3d Cir. 1982) (internal punctuation omitted)).

points in this case. First, we start with the adjudicated fact that well over a half billion dollars has been spirited away from the Debtor. Second, the Court found good cause for expedited discovery here. At the same time, the Court determined that service was proper and that the Court had personal jurisdiction over Raveendran. Third, as discussed previously, this Court has also found that Raveendran's failure to comply with discovery orders has prejudiced the Plaintiffs. Raveendran's continued pattern of delay deprives the Plaintiffs of information regarding the whereabouts of the Alpha Funds or the Camshaft LP Interest.[58]

Finally, and very relevant to this factor, the Court has already determined that Raveendran is in contempt of the previous discovery orders and has imposed sanctions of $10,000 per day until he purges his contempt. The monetary sanctions, however, remain unpaid and have been ineffective. Raveendran lives abroad and apparently has no intention of satisfying his financial penalties or complying with the discovery orders.[59] Accordingly, the monetary sanctions have not provided an effective remedy, making a harsher sanction such as default judgment appropriate in this instance.[60]

---

[58] In exchange for the 2022 transfer of the Alpha Funds (*i.e.*, $533,000,000) to the Camshaft Capital Fund, L.P. (the "Camshaft Fund," which has been described as a sham hedge fund), the Debtor received limited partnership interests in the Camshaft Fund (the "Camshaft LP Interest"). *See* Opinion denying Motion to Dismiss issued in this adversary proceeding on the same date as this Opinion, pp. 4-5.

[59] *See Bortex Ind.,* 296 F.R.D. at 387-88 (Court found that monetary sanctions were ineffective against a Chinese company without any known assets in the United States and concluded that no sanction other than a case-dispositive sanction (in that case, dismissal) would remedy the prejudice to the other party.)

[60] *See Northstar Fin. Co., Inc. v. Nocerino,* 2013 WL 6061349, *8 (E.D. Pa. Nov. 18, 2013) (After issuing three orders for the production of the same materials and imposing two monetary sanctions, one of which defendant refused to honor, the Court decided alternative sanctions had not worked and entered default judgment, writing: "[t]o provide Defendants with yet another chance would reward them for their contempt and encourage others to defy this Court's orders.")

The fifth factor weighs in favor of entering the default judgment.

*Poulis* Factor 6: Meritoriousness of the claim or defense.

Courts generally apply the standard used for a Rule 12(b)(6) motion to dismiss when assessing the meritoriousness of a claim under *Poulis*.[61] "A claim will be determined to be meritorious if the allegations in the pleadings would 'support recovery by plaintiff or would constitute a complete defense' if presented at trial."[62]

Along with the issuance of this Opinion, the Court is issuing its Opinion and Order denying Raveendran's motion to dismiss the Complaint which, in addition to determining proper service and personal jurisdiction over Raveendran, reviews each claim under the Rule 12(b)(6) standard and decides that the Complaint contains sufficient factual allegations to state plausible claims against Raveendran for aiding and abetting breach of fiduciary duty, breach of fiduciary duty, accounting, conversion, and civil conspiracy.

The sixth factor also weighs in favor of entering the default judgment.

The relationship between the discovery violations and the Plaintiffs' claims.

All six *Poulis* factors weigh in favor of entering the sanction of default judgment against Raveendran. An additional check on the court's exercise of discretion to enter a sanction under Rule 37(b)(2) requires the court to determine

---

[61] *Bortex Ind.*, 296 F.R.D. at 388 (citing *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008)).
[62] *Id.* (quoting *Poulis*, 747 F.2d at 869-70)).

16

that the sanction is "just," and that the sanction is specifically related to the claims at issue.[63] "[T]hese limitations are rooted in notions of due process."[64]

In *Insurance Corporation of Ireland, Ltd.*, the Supreme Court determined that the district court's Rule 37(b)(2) sanction was justified upon finding that: the offending party did not respond to repeated orders of the court requiring it to provide the requested material (despite agreeing to respond); the request for the discovery was not frivolous or a misuse of the judicial process; and the offending party had ample warning that continued failure to comply would result in the sanction.

Similarly, here, the Rule 37(b)(2) sanction is just. Raveendran has ignored orders for expedited discovery and, even when promising to comply, this Court determined that his response was evasive, incomplete and not in good faith. This Court also determined that the Plaintiffs had good cause for their expedited discovery requests due to their concern that the Defendants were continuing to conceal (and possibly further remove) the location of the Alpha Funds and Camshaft LP Interest, against the background of related cases showing a strategic pattern of delay and obfuscation. Moreover, Raveendran has already been found in contempt, which he has refused to purge, and has had ample warning about this additional sanction. Yet still he refuses to comply.

---

[63] *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). *See also Clientron*, 894 F.3d at 580-81.
[64] *Clientron*, 894 F.3d at 581.

17

The second due process concern requires that the unproduced discovery is sufficiently related to the claims to support the "presumption that the failure to produce constituted an admission by the offending party that its asserted claim or defense lacked merit."[65]  The Plaintiffs assert that their discovery requests are central to the claims asserted against Raveendran.  In particular, the Plaintiffs note that they are seeking:

- documents and information concerning Raveendran's positions and roles at the Debtor (RFP No. 6; Interrogatory No. 1);

- documents and information concerning the transfers and current ownership of the Alpha Funds and the limited partnership interest in Camshaft that the Debtor received on account of those funds (*i.e.,* the Camshaft LP Interest) including statements made by the BYJU's organization to shareholders and the public (RFP Nos. 1-2, Interrogatory Nos. 2-4, 6-8);

- documents and information testing Raveendran's claim in his October 9, 2024 declaration that the Alpha Funds had been fully offset by an English supply outsourcing company called OCI Limited (RFP No. 3, Interrogatory No. 5);

- Raveendran's documents and communications concerning the Court's March 2024 order compelling Riju to "determine the location amount, and composition of the Alpha Funds." (RFP No. 4);

- the Debtor's books and records. (RFP No. 5).

The requested discovery directly relates to the claims for aiding and abetting Riju's breach of fiduciary duty (Count I); Raveendran's breach of fiduciary duty (Count II); accounting (Count IV); conversion of the Camshaft LP Interest (Count V); and civil conspiracy (Count VI).  The core of these claims require discovery

---

[65] *Clientron*, 894 F.3d at 581 (citing *Ins. Corp. of Ireland*, 456 U.S. at 705).

relating to all documents and communications regarding the Alpha Funds and the Camshaft LP Interest and Raveendran's role in their fraudulent transfer and subsequent cover-up.

The record before the Court satisfies any due process concerns about entering default judgment as a Rule 37(b)(2) sanction.

CONCLUSION

For the reasons set forth above, the Court will enter default judgment against Defendant Raveendran under Rule 37(b)(2)(A)(vi) on Counts I, II, V and VI.  Default judgment will also be entered on Count V, directing Raveendran to provide a full and accurate accounting of the Alpha Funds and any proceeds thereof, such as the Camshaft LP Interest, including each and every subsequent transfer and any proceeds thereof.

The Court acknowledges that the relief granted herein is extraordinary.  But the circumstances of this case are, frankly, unique and unlike anything the undersigned has encountered before, thereby making such relief in this case richly warranted.

An appropriate judgment order will be entered by the Court following the completion of briefing on damages as separately ordered by the Court.

FOR THE COURT:

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

Dated: (Amended Opinion) December 8, 2025